**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Richmond Division**

| | | |
|---|---|---|
| ERNALEE B.,[1] | ) | |
| *Plaintiff*, | ) | |
| v. | ) | Civil No. 3:25-cv-262 (DJN) |
| FRANK BISIGNANO, Commissioner of Social Security, | ) | |
| *Defendant*. | ) | |

# REPORT AND RECOMMENDATION

In this action, Plaintiff Ernalee B. seeks review of the Commissioner of the Social Security Administration's ("SSA") decision to deny her Title II application for disability insurance benefits and Title XVI application for Supplemental Security Income ("SSI"). This matter comes before the Court for a Report and Recommendation under 28 U.S.C. § 636(b)(1)(B) on cross-motions for summary judgment. (ECF Nos. 7, 12, 14.) The motions have been fully briefed (ECF Nos. 12, 13, 14, 17), rendering this matter ripe for review.

Plaintiff moves the Court to reverse the Commissioner's decision denying her Social Security benefits and remand for further administrative proceedings. (ECF No. 13, at 18.)[2] As the basis for such relief, Plaintiff argues that the Administrative Law Judge ("ALJ"): (1) failed to properly evaluate the opinion of consultative examiner Oguchukwu Obiekwe, N.P., and did not sufficiently explain why he found the opinion unpersuasive; and (2) erred in determining that

[1] The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that federal courts refer to claimants by their first names and last initials in social security cases.
[2] The Court employs the pagination utilized by the CM/ECF system.

Plaintiff's mental impairments were not severe and by failing to include any mental limitations in the residual functional capacity ("RFC") determination. (ECF No. 13, at 12-18; ECF No. 17, at 1.)

In response, the Commissioner contends that the ALJ performed a proper analysis of N.P. Obiekwe's opinion, explaining that he found it mostly unpersuasive because it was "inconsistent with the record evidence as a whole and not well supported by the results of her examination." (ECF No. 14, at 2.) The Commissioner further argues that the ALJ fully evaluated Plaintiff's mental impairments, "explaining why he found no more than mild limitations in any functional area" and "discuss[ing] Plaintiff's impairments . . . in evaluating her [RFC]." (ECF No. 14, at 2.) The Commissioner moves the Court to affirm the final decision denying benefits as supported by substantial evidence. (ECF No. 14, at 24.)

For the reasons set forth below, the Court finds that the ALJ applied correct legal standards in analyzing N.P. Obiekwe's medical opinion evidence and in conducting the RFC assessment. Because substantial evidence supports the ALJ's determination, the Court RECOMMENDS that Plaintiff's Motion for Summary Judgment (ECF No. 12) be DENIED, Defendant's Motion for Summary Judgment (ECF No. 14) be GRANTED, and the final decision of the Commissioner be AFFIRMED.

## I. PROCEDURAL HISTORY

Plaintiff filed an application for disability insurance benefits on January 22, 2022, and an application for SSI on January 31, 2022, both alleging disability beginning on March 30, 2018. (Administrative Record ("R.")[3] at 98, 99.) In her applications, Plaintiff alleged that she suffered

[3] The administrative record in this case remains filed under seal, pursuant to E.D. Va. Loc. Civ. R. 5 and 7(C). In accordance with these rules, the Court will exclude personal identifiers from this

from migraines, sciatica, depression, anxiety, a heart problem, a lung disorder, and ankle, elbow, back, and hip problems. (R. at 88, 100.) The SSA denied Plaintiff's applications initially and again upon reconsideration. (R. at 96, 98, 99, 108, 110, 120, 121, 130.) Plaintiff requested a hearing before an ALJ, and one was held on January 3, 2024. (R. at 37-70, 156.)

On January 18, 2024, the ALJ issued a written decision, finding Plaintiff not disabled under the Social Security Act ("the Act"). (R. at 17-32.)[4] On February 11, 2025, the SSA Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner. (R. at 1-5.) Plaintiff now seeks judicial review pursuant to 42 U.S.C. § 405(g) and § 1383(c).

## II. STANDARD OF REVIEW

The Act defines a disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). An individual has a disability "only if his [or her] physical or mental impairment or impairments are of such severity that he [or she] is not only unable to do his [or her] previous work but cannot, considering his [or her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . . ." *Id.* § 423(d)(2)(A).

SSA regulations set forth a five-step process to determine whether an individual is disabled. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); *see Mascio v. Colvin*, 780 F.3d 632, 634-35 (4th Cir.

Report and Recommendation. The Court will further restrict its discussion of Plaintiff's medical information to the extent necessary to result in a proper analysis of the case.

[4] Plaintiff previously filed a Title II application for a disability insurance benefits on March 1, 2016. (R. at 74.) A hearing decision denied that application on March 29, 2018. (R. at 74-84.)

2015) (describing the ALJ's five-step sequential evaluation). At step one, the ALJ reviews the claimant's current work activity to determine if he or she has been participating in substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). At step two, the ALJ asks whether the claimant's medical impairments meet the regulations' severity and duration requirements. *Id.* §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). At step three, the ALJ determines whether the medical impairments meet or equal an impairment listed in the regulations. *Id.* §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). Between steps three and four, the ALJ determines the claimant's RFC, which accounts for the most that the claimant can do despite his or her impairments. *Id.* §§ 404.1545(a)(1), 416.945(a)(1).

At step four, the ALJ assesses whether the claimant can perform his or her past employment given his or her RFC. *Id.* §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). The burden of proof remains with the claimant through step four of the analysis, and the claimant must prove that his or her limitations preclude the claimant from performing his or her past relevant work. *See Bowen v. Yuckert,* 482 U.S. 137, 146 n.5 (1987); *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012). If such past work can be performed, then benefits will not be awarded, and the analysis ends. *See* 20 C.F.R. §§ 404.1520(f), 416.920(f). However, if the claimant cannot perform his or her past work, the analysis proceeds to step five, and the burden then shifts to the Commissioner to show that the claimant can perform other work that is available in the national economy. *See id.* §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). The Commissioner usually offers this evidence through the testimony of a vocational expert. *See Mascio*, 780 F.3d at 635.

In reviewing a decision to deny benefits, the Court will affirm the SSA's "disability determination 'when an ALJ has applied correct legal standards and the ALJ's factual findings are supported by substantial evidence.'" *Id.* at 634 (quoting *Bird v. Comm'r of Soc. Sec. Admin.*, 699

F.3d 337, 340 (4th Cir. 2012)). Substantial evidence requires more than a scintilla but less than a preponderance of evidence and includes the kind of relevant evidence that a reasonable mind could accept as adequate to support a conclusion. *See Hancock*, 667 F.3d at 472; *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). The substantial evidence standard "presupposes . . . a zone of choice within which the decisionmakers can go either way, without interference by the courts." *Dunn v. Colvin*, 607 F. App'x 264, 274 (4th Cir. 2015) (quoting *Clarke v. Bowen*, 843 F.2d 271, 272-73 (8th Cir. 1988)). Thus, a decision by the Commissioner is not subject to reversal merely because substantial evidence would have supported a different conclusion. *Id.*

To determine whether substantial evidence exists, the Court must examine the record as a whole, but may not "reweigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [ALJ]." *Hancock*, 667 F.3d at 472 (quoting *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005) (second alteration in original)); *see Craig*, 76 F.3d. at 589. The Court must consider the support for the Commissioner's decision and "whatever in the record fairly detracts from its weight." *Breeden v. Weinberger*, 493 F.2d 1002, 1007 (4th Cir. 1974) (quoting *Universal Camera Corp. v. N.L.R.B.*, 340 U.S. 474, 488 (1951)). If a fact is supported by substantial evidence, the Court must affirm, regardless of whether the Court agrees with such findings. *Hancock*, 667 F.3d at 476 (citing *Smith v. Chater*, 99 F.3d 635, 638 (4th Cir. 1996)). If the Commissioner's findings are arbitrary or unjustified, then they are not supported by substantial evidence, and the Court must reverse the decision. *See Breeden*, 493 F.2d at 1007.

## III. THE ALJ'S DECISION

The ALJ first determined that Plaintiff met the insured status requirements of the Act through September 30, 2021. (R. at 18, 20.) Then, the ALJ analyzed Plaintiff's disability claim

under the five-step evaluation process. (R. at 17-32); *see* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); *Mascio*, 780 F.3d at 634-35.

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since March 30, 2018 (the alleged onset date). (R. at 20.) While Plaintiff worked after the alleged onset date (specifically, throughout 2020 on a part-time basis), her work activity did not rise to the level of substantial gainful activity. (R. at 20.)

At step two, the ALJ determined that Plaintiff suffered from the severe impairments of "fibromyalgia, migraine headaches, degenerative disc disease of the cervical spine, degenerative disc disease of the lumbar spine, degenerative joint disease of the right hand, obstructive sleep apnea (OSA), asthma, and obesity." (R. at 20.) As relevant to this appeal, the ALJ found that Plaintiff's depression and anxiety were not severe impairments because "considered singly and in combination, [they] do not cause more than minimal limitation in [Plaintiff]'s ability to perform basic mental work activities." (R. at 21.)

In so concluding, the ALJ considered the four broad areas of mental functioning (commonly called "paragraph B" criteria).[5] (R. at 21-22.) The ALJ concluded that Plaintiff's mental impairments caused no more than a mild limitation in her ability to understand, remember, or apply information; interact with others; concentrate, persist, or maintain pace; and adapt or manage herself. (R. at 21-22.) To support this conclusion, the ALJ cited objective findings that

[5] The SSA evaluates the effects of a mental disorder on four areas of mental functioning based on a five-point rating scale. 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00(F)(2). An extreme limitation is the inability to function independently, appropriately, or effectively, and on a sustained basis in an area. C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00(F)(2)(e). A marked limitation exists when an impairment seriously limits the ability to do the same. 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00(F)(2)(d). Moderate indicates a fair limitation, mild includes a slight limitation, and "no" or "none" means the claimant can function in the area independently, appropriately, effectively, and on a sustained basis. 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00(F)(2)(a)-(c).

Plaintiff exhibited "good insight" and "linear and logical thought processes." (R. at 21.) Her treatment records indicated that she denied memory changes. (R. at 21.) Plaintiff's records also demonstrated that she had a "normal mood and affect" and was "pleasant and cooperative" at appointments. (R. at 21.) The ALJ also noted that Plaintiff was "focused and engaged" during a psychological examination and could correctly complete most of the mental status questions. (R. at 22.) Treatment records also generally described Plaintiff as "alert and oriented" with "good attention and concentration." (R. at 22.) The ALJ further noted that Plaintiff controlled her mental health symptoms with medication and had never undergone mental health counseling. (R. at 22.)

The ALJ concluded: "Because [Plaintiff]'s medically determinable mental impairments cause no more than 'mild' limitation in any of the functional areas *and* the evidence does not otherwise indicate that there is more than a minimal limitation in [Plaintiff]'s ability to do basic work activities, they are non-severe." (R. at 22 (citing 20 C.F.R. §§ 404.1520a(d)(1), 416.920a(d)(1)).) In any event, the ALJ "considered all of [Plaintiff]'s medically determinable impairments, including those that are not severe, when assessing [Plaintiff]'s residual functional capacity." (R. at 21; *see* R. at 22 ("The . . . [RFC] assessment reflects the degree of limitation the [ALJ] . . . found in the 'paragraph B' mental function analysis.").)

At step three, the ALJ concluded that Plaintiff did not have an impairment, individually or in combination, which met or medically equaled a disability listing. (R. at 22-24.)

The ALJ then determined Plaintiff's RFC. (R. at 24-30.) Based on the record, the ALJ found that Plaintiff retained the ability to perform light work as defined by 20 C.F.R. §§ 404.1567(b) and 416.967(b), except:

> [Plaintiff] can never climb ladders, ropes, or scaffolds, and can never crawl. She can occasionally stoop, crouch, kneel, balance, and climb ramps or stairs. She can frequently finger with her dominant right upper extremity. She can tolerate no exposure to extreme cold, extreme heat, concentrated wetness or humidity, and

> concentrated fumes, odors, dust, gasses, poorly ventilated areas, or chemicals. She can tolerate no exposure to moving machinery or to unprotected heights. She can tolerate no more than a moderate noise work environment.

(R. at 24.)

In arriving at the RFC, the ALJ summarized Plaintiff's subjective complaints. (R. at 24-28.) Plaintiff stated that she required help with household chores. (R. at 25.) She could wash the dishes but needed frequent breaks when doing so. (R. at 25.) Plaintiff reported pain in both hands, making it difficult to open bottles, button buttons, grab zippers, comb her hair, and tie her shoes. (R. at 25.) She also stated she could not pick up coins from a table and had to slide them to the edge. (R. at 25.) Plaintiff stated that she took naps at least twice a day for several hours each time and watched several hours of television per day. (R. at 25.) She also complained of morning stiffness, general body pain, depression, and fatigue. (R. at 26.) She reported daily migraine headaches that interfered with her activities and caused her to spend most of the day in bed or in a recliner. (R. at 26.) She further stated that her sleep apnea caused "excessive daytime sleepiness, snoring, and morning headaches." (R. at 27.)

The ALJ also detailed Plaintiff's medical records pertaining to her impairments. (R. at 26-29.) The ALJ considered diagnostic imaging during the relevant time frame, examination findings, and therapeutic consultations. (R. at 26-29.)

Regarding Plaintiff's mental impairments, the ALJ noted that while Plaintiff reported depression and anxiety at her fibromyalgia treatment visits, her mental status findings were normal. (R. at 26.)

Regarding Plaintiff's fibromyalgia, her examinations demonstrated tenderness in six joints, along with twelve trigger points. (R. at 26.) She had no evidence of synovitis, but she did show "skin changes on her hands, including thickening and cracking of the skin, along with dark spots."

(R. at 26.) Plaintiff had limited range of motion in her shoulders and hips and crepitus in both knees. (R. at 26.) She also had limited range of motion in her cervical spine and lumbar spine, with tenderness in the latter. (R. at 26.) Plaintiff had no "deformity, tenderness, or swelling in her shoulders, elbows, hands or wrists, knees, feet, or ankles." (R. at 26.) While Plaintiff testified that she took four different prescription medications for her fibromyalgia, the ALJ noted that her records did not reflect that these medications were prescribed. (R. at 26.) Based on the medical evidence, the ALJ found that Plaintiff's condition had not worsened during the period at issue. (R. at 26.) The ALJ also noted Plaintiff's testimony that she could "perform a wide range of her activities of daily living," albeit while taking breaks. (R. at 26.) Based on this, the ALJ concluded that "[Plaintiff]'s fibromyalgia contributes to her exertional, postural, manipulative, and environmental limitations." (R. at 26.)

As for Plaintiff's migraines, she reported that they occurred every day, but her objective neurological findings were normal, showing intact cranial nerves and no focal neurological deficits. (R. at 26.)

The ALJ reviewed records regarding Plaintiff's degenerative disc disease in her cervical and lumbar spine and the degenerative joint disease in her right hand. (R. at 26-27.) Examinations indicated a positive straight leg raise on her left and right side, weakness in her bilateral upper and lower extremities, tenderness of the lumbar spine, and limited range of motion in her cervical spine. (R. at 26-27.) Plaintiff exhibited a non-antalgic gait but had difficulty walking on her heels and toes. (R. at 27.) She had slightly decreased strength in her right lower extremity, but she demonstrated full strength in all her other extremities. (R. at 27.) She had "decreased range of motion in her bilateral shoulders and right hip but otherwise [had] normal range of motion." (R. at 27.) Plaintiff had "no deformity, tenderness, or swelling in her shoulders, elbows, hands[,]

wrists, knees, feet, or ankles, but she did have tenderness in her neck, mid-back, and lower back." (R. at 27.) A lumbar X-ray showed mild spondylosis, and an X-ray of her right hand revealed mild degenerative changes. (R. at 27.) Plaintiff reported that she had taken Naprosyn and Cyclobenzaprine for her lumbar symptoms but was not currently receiving treatment. (R. at 27.)

As for Plaintiff's obstructive sleep apnea and asthma, she used a CPAP machine, although the mask made her feel claustrophobic. (R. at 27.) Her pulmonary findings were normal with clear lungs and no wheezes, rhonchi, or rales. (R. at 27.) While her pulmonary function testing showed no evidence of obstruction, she had reduced lung volume with mild restrictive defect. (R. at 27.) She benefitted from CPAP therapy, and using her inhaler relieved her asthma symptoms. (R. at 27.)

The ALJ noted that Plaintiff's obesity further compounded her medical condition. (R. at 27.) The ALJ considered this in evaluating Plaintiff's RFC and noted that her obesity, along with her other physical conditions, warranted the restrictions specified in the RFC. (R. at 27.)

After considering the record evidence, the ALJ found Plaintiff's statements regarding the intensity, persistence, and limiting effects of her symptoms "not entirely consistent with the medical evidence and other evidence in the record." (R. at 25.) The ALJ further noted that "[v]arious factors are inconsistent with limitations to the degree alleged." (R. at 27.) The ALJ observed that Plaintiff's treatment records reflected conservative treatment and stable symptoms. (R. at 27.) While Plaintiff testified to receiving trigger point injections, her records indicated only that she could have the injections if needed, not that she in fact received them. (R. at 27.) Similarly, although she testified that she took multiple prescription medications for her fibromyalgia, there was no indication in the record that these medications were prescribed for her. (R. at 27.)

The ALJ also noted that she was able to do household chores, with occasional breaks, and could perform her personal care tasks, although she had trouble combing her hair. (R. at 27.) Treatment records from August 2023 also stated that Plaintiff could "perform all of her activities of daily living without assistance." (R. at 28.) The ALJ concluded that "[Plaintiff]'s impairments impose some limitations, but the degree of limitation that is consistent with the record has been accounted for by the restrictions noted in the [RFC]." (R. at 28.)

The ALJ then considered the medical opinions and prior administrative medical findings. (R. at 28-29.) As relevant to this appeal, the ALJ considered the medical opinion of state agency reviewing physician William Rutherford, Jr., M.D., who determined in September 2022 that Plaintiff could "perform light exertion work, occasionally crawl and climb ladders, ropes, or scaffolds, and occasionally perform all other postural work activities." (R. at 28.) The ALJ noted that in May 2023, state agency reviewing physician Michael Koch, M.D., reached substantially the same determination as Dr. Rutherford. (R. at 28.) However, Dr. Koch added that Plaintiff should "avoid concentrated exposure to extreme cold, pulmonary irritants, and hazards." (R. at 28.) Both physicians supported their determinations by citing Plaintiff's "right lower extremity weakness, deficits in range of motion, obesity, and obstructive sleep apnea." (R. at 28.) The ALJ found these opinions consistent with the record evidence and therefore found them persuasive. (R. at 28.)

In September 2022, Oguchukwu Obiekwe, N.P., examined Plaintiff and opined that she could lift and carry ten pounds frequently and twenty pounds occasionally, sit for about four hours and stand/walk for about two hours each during an eight-hour workday, frequently perform manipulative work activities bilaterally, frequently bend, occasionally stoop and kneel, and never squat. (R. at 29.) N.P. Obiekwe supported this opinion with her exam findings showing normal

gait, full reflexes, intact sensation, decreased range of motion in both shoulders and right hip but otherwise normal range of motion throughout, some tenderness in Plaintiff's neck and back, and a positive straight leg raise on the right. (R. at 29.) The ALJ concluded that this opinion was "not entirely consistent" with the record evidence of:

> multiple trigger points, no synovitis, mild tenderness to palpation of the lumbar spine, positive straight leg raise on the left, limited range of motion in her cervical spine, slightly decreased strength in her right lower extremity, normal gait, mild degenerative changes shown in the lumbar spine, severe obstructive sleep apnea, and mild pulmonary restriction.

(R. at 29.) The ALJ also found N.P. Obiekwe's opinion unsupported because her exam findings were "not entirely consistent with the significant restrictions in sitting, standing, and walking, postural work activities, and manipulative work activities suggested in the medical opinion." (R. at 29.) As such, the ALJ found N.P. Obiekwe's opinion persuasive "only with respect to the lifting and carrying limitations." (R. at 29.)

In August 2022, Carla Galusha, Ph.D., performed a mental examination of Plaintiff. (R. at 29.) Dr. Galusha found Plaintiff mildly impaired in her ability to perform detailed tasks versus simple and repetitive ones and moderately impaired in her ability to perform activities consistently, interact with coworkers and the public, and deal with the typical stresses of competitive work. (R. at 29.) Dr. Galusha supported her opinion with her exam findings, which were "generally within normal limits, except for some tearfulness, and a depressed and sad mood." (R. at 29.) The ALJ found Dr. Galusha's opinion "not generally consistent with the evidence in the record, which . . . showed generally normal mental status findings." (R. at 29.) The ALJ therefore found Dr. Galusha's opinion unpersuasive. (R. at 29.)

In September 2022, state agency reviewing psychologist Joseph Leizer, Ph.D., opined that Plaintiff could complete a normal workweek at a generally consistent pace with only minimal and

infrequent need for accommodations, perform only very familiar or extremely routine procedures, and maintain concentration for two-hour periods to complete a workday. (R. at 28.) He found that Plaintiff would need help adapting to change unless it was infrequent or gradual. (R. at 28.) Dr. Leizer supported this opinion by citing Plaintiff's "diagnoses of anxiety and depression, irritable mood, low motivation for tasks, difficulty interacting," lack of inpatient treatment, lack of treatment with a mental health specialist, and her exam demonstrating "adequate interaction, normal speech and concentration, and ability to follow simple instructions." (R. at 28-29.)

In May 2023, state agency reviewing psychologist William Carne, Ph.D., opined that Plaintiff's anxiety and depression were non-severe impairments. (R. at 29.) Dr. Carne supported this opinion with evidence showing mood swings, traffic anxiety, fair to baseline mental exams, no mental health emergencies, and an ability to perform activities of daily living. (R. at 29.) Dr. Carne also cited Plaintiff's lack of ongoing mental health treatment. (R. at 29.)

The ALJ noted that the record evidence demonstrated Plaintiff had normal mental status findings except for a consultative psychological evaluation, which showed "abnormalities in her mood and affect, but otherwise benign mental status findings." (R. at 29.) Based on this, the ALJ found Dr. Leizer's opinion unpersuasive and Dr. Carne's opinion persuasive. (R. at 29.)

After completing the RFC assessment, the ALJ found at step four that Plaintiff could not perform her past relevant work as either a home health aide or a house parent. (R. at 30.) At step five, the ALJ concluded that jobs existed in significant numbers in the national economy that Plaintiff could perform considering Plaintiff's age (closely approaching advanced age)[6], education, and RFC. (R. at 31-32.) Specifically, after considering the vocational expert's

[6] On the alleged disability onset date, Plaintiff was categorized as a "younger individual" (defined as between ages 18 and 49). (R. at 30.) Plaintiff subsequently changed age categories to "closely approaching advanced age." (R. at 30.)

testimony, the ALJ identified the following representative occupations: routing clerk, bagger for garments, and tabber. (R. at 31.)

Therefore, the ALJ found Plaintiff not disabled from March 30, 2018 (the alleged onset date) through January 18, 2024 (the date of the ALJ's decision). (R. at 32.)

## IV. ANALYSIS

Plaintiff raises two challenges to the ALJ's decision. First, Plaintiff argues that the ALJ improperly evaluated the medical opinion of Oguchukwu Obiekwe, N.P. (ECF No. 13, at 12-16; ECF No. 17, at 1-2.) Second, Plaintiff alleges that the ALJ erred in determining that Plaintiff's mental impairments were not severe and in failing to include mental limitations in the RFC determination. (ECF No. 13, at 16-18; ECF No. 17, at 2-3.) The Court addresses each argument below and finds no reversible error.

### A. The ALJ Applied Correct Legal Standards in Evaluating N.P. Obiekwe's Medical Opinion, and Substantial Evidence Supports the ALJ's Findings

#### 1. *Applicable Regulations for Evaluating Medical Opinion Evidence*

Under applicable regulations,[7] the ALJ must consider and evaluate the persuasiveness of all medical opinions or prior administrative medical findings from medical sources without deferring or giving any specific evidentiary weight to any medical source. 20 C.F.R. §§ 404.1520c(a), 416.920c(a). Specifically, the ALJ must articulate the "persuasiveness" of all medical opinions by considering five factors: (1) supportability; (2) consistency; (3) relationship with the claimant; (4) specialization; and (5) "other factors that tend to support or contradict a

[7] Claims involving medical opinion evidence filed on or after March 27, 2017 are evaluated using a revised regulatory framework. 20 C.F.R. §§ 404.1520c, 416.920c; (*see also* ECF No. 13, at 13; ECF No. 14, at 14).

medical opinion[,]" including "familiarity with the other evidence" or "understanding of [the SSA] disability program's policies and evidentiary requirements." *Id.* §§ 404.1520c, 416.920c.

Supportability and consistency are the "most important" factors, and the ALJ must discuss how these factors were considered. *Id.* §§ 404.1520c(b)(2), 416.920c(b)(2). The regulations define supportability and consistency as follows:

> (1) *Supportability*. The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be.
>
> (2) *Consistency*. The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be.

*Id.* §§ 404.1520c(c)(1)-(2), 416.920c(c)(1)-(2). The ALJ may, but is not required to, explain how the other factors were considered. *Id.* §§ 404.1520c(b)(2), 416.920c(b)(2).

*2. N.P. Obiekwe's Medical Opinion and the ALJ's Analysis*

On September 3, 2022, N.P. Obiekwe examined Plaintiff and completed a Medical Consultant Report. (R. at 27, 29, 486-92.) On examination, Plaintiff exhibited no deformity, tenderness, or swelling in her shoulders, elbows, hands/wrists, and feet/ankles; no deformity, tenderness, swelling, or crepitus in her knees; normal spinal curvature; some tenderness to palpation in her back and neck; and a positive straight leg raise on the right. (R. at 27, 29, 490.) Plaintiff had a normal gait, full reflexes, and intact sensation. (R. at 27, 29, 488-89.) Plaintiff also had slightly decreased range of motion in her shoulders and right hip but otherwise showed a normal range of motion. (R. at 27, 29, 489-90.) Plaintiff's lungs were clear to auscultation bilaterally, with no wheezes, rales, or rhonchi. (R. at 488.) She demonstrated no accessory muscle use with breathing and was comfortable on room air. (R. at 488.) In her opinion, N.P. Obiekwe

found that Plaintiff could lift and carry up to ten pounds frequently and twenty pounds occasionally, sit for about four hours and stand/walk for about two hours each during an eight-hour workday, frequently perform manipulative work activities bilaterally, frequently bend, occasionally stoop and kneel, and never squat. (R. at 29, 490-91.)

After summarizing N.P. Obiekwe's examination findings and opinion (R. at 27, 29), the ALJ found the opinion "persuasive only with respect to the lifting and carrying limitations." (R. at 29.) In reaching this conclusion, the ALJ analyzed consistency, finding that N.P. Obiekwe's opinion was "not entirely consistent" with the record evidence of:

> multiple trigger points, no synovitis, mild tenderness to palpation of the lumbar spine, positive straight leg raise on the left, limited range of motion in her cervical spine, slightly decreased strength in her right lower extremity, normal gait, mild degenerative changes shown in the lumbar spine, severe obstructive sleep apnea, and mild pulmonary restriction.

(R. at 29.) The ALJ also considered supportability, finding that N.P. Obiekwe's exam findings did not support "the significant restrictions in sitting, standing, and walking, postural work activities, and manipulative work activities suggested in [her] medical opinion." (R. at 29.) Thus, the ALJ discussed the most important factors of consistency and supportability and sufficiently explained why he found N.P. Obiekwe's opinion persuasive only as to the lifting and carrying limitations.

Plaintiff raises various arguments in challenging the ALJ's evaluation of N.P. Obiekwe's opinion. All of them fail. First, Plaintiff contends that the ALJ improperly evaluated the opinion of N.P. Obiekwe by failing to consider consistency and supportability as distinct factors, and instead "combining them into a single, stream-of-consciousness explanation that offers little analytical clarity." (ECF No. 13, at 14.) Defendant does not dispute that these two factors must be considered independently but responds that Plaintiff's argument "is not consistent with the

actual text of the ALJ's decision." (*See* ECF No. 14, at 14-16.) The Court agrees. Plaintiff's argument places the structure and word choice of the ALJ's decision above its substance. The Court finds that the ALJ properly conducted an independent analysis of each factor.

After summarizing N.P. Obiekwe's opinion, the ALJ explained that it was "not entirely consistent [with the record evidence]." (R. at 29.) Here, the ALJ did what was required to analyze consistency, explaining that N.P. Obiekwe's opined limitations were not consistent "with the evidence from other medical sources and nonmedical sources in the claim." 20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2). The ALJ next discussed supportability by comparing N.P. Obiekwe's exam findings with her opined limitations, finding that "NP Obiekwe's examination findings [we]re not entirely *consistent* with the significant restrictions in sitting, standing, and walking, postural work activities, and manipulative work activities suggested in the medical opinion." (R. at 29 (emphasis added).) Although the ALJ used the word "consistent" in this sentence, the ALJ was discussing whether and to what extent "the objective medical evidence and supporting explanations presented by [N.P. Obiekwe] . . . support [] her medical opinion," which goes to supportability. 20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1). The ALJ could have perhaps been clearer by using the word "supported" instead of "consistent with," but this choice of words does not prevent the Court from following the ALJ's discussion of the required factors. *See Todd A. v. Kijakazi*, No. 3:20-cv-594, 2021 WL 5348668, at *4 (E.D. Va. Nov. 16, 2021) ("[T]he ALJ need not necessarily use the words 'supportability' or 'consistency,' as long as the ALJ still performs the requisite analysis of these factors."). The Court finds that the ALJ properly discussed supportability and consistency in evaluating the opinion of N.P. Obiekwe.[8]

[8] Plaintiff cites several cases to support the proposition that these factors must be considered independently, and that failure to consider consistency as a separate factor is reversible error. (ECF No. 13, at 13 (citing *Lauren P. v. Dudek*, Civ. No. 24-480, 2025 U.S. Dist. LEXIS 42182, at *7

Plaintiff next argues that the ALJ's discussion "does not articulate any meaningful rationale for discounting NP Obiekwe's opinion" and that it instead "merely recites her objective findings, followed by a summary of other evidence in the record, without explaining why certain findings are purportedly inconsistent with NP Obiekwe's assessment while others support the lifting and carrying limitations." (ECF No. 13, at 14; ECF No. 17, at 1-2.)[9] Plaintiff claims that the ALJ

---

(D. Md. Mar. 10, 2025); *Duane H. v. Kijakazi*, 1:20-cv-3673, 2021 U.S. Dist. LEXIS 257651, at *3 (D. Md. Dec. 29, 2021); *Travis W. v. Dudek*, Civ. No. 24-159, 2025 U.S. Dist. LEXIS 55705, at *9-10 (D. Md. Mar. 26, 2025)).) Each of these cases is distinguishable from the one at hand.

In *Lauren P.*, the court found that the ALJ had improperly evaluated a physician's medical opinion when the ALJ "neither assessed objective medical evidence and supporting explanations presented by [the physician]'s opinion, nor [the physician]'s diagnostic techniques, data collection procedures/analysis, and other objective medical evidence." 2025 U.S. Dist. LEXIS 42182, at *12 (quotation marks omitted) (internal citations omitted). As such, the court found that the ALJ "failed to consider how [the physician]'s treatment notes factored into the opinion's conclusions." *Id.* Here, on the other hand, the ALJ specifically addressed N.P. Obiekwe's examination findings in his assessment of her opinions. (*See* R. at 29.)

In *Duane H.*, the court found that "the ALJ did not acknowledge the support (or lack thereof) of the treating physician's opinion whatsoever" and therefore "plainly did not consider the supportability of the physician's opinion." 2025 U.S. Dist. LEXIS 257651, at *9. Again, in the instant case, the ALJ specifically discussed whether N.P. Obiekwe's opinions were supported by her exam findings. (*See* R. at 29.)

In *Travis W.*, the court found that the ALJ failed to provide the proper consistency analysis when the ALJ only determined that the physician's opinion was inconsistent with the physician's own notes and did not consider whether the opinion was consistent with evidence from *other* sources. 2025 U.S. Dist. LEXIS 55705, at *9. Here, on the other hand, the ALJ specifically addressed the consistency of N.P. Obiekwe's opinions with the record evidence, including evidence from other sources. (*See* R. at 29.)

[9] Plaintiff characterizes the ALJ's discussion as listing evidence and then stating a conclusion without sufficient explanation, precisely the approach that the Fourth Circuit held frustrates meaningful review. *See Thomas v. Berryhill*, 916 F.3d 307, 311 (4th Cir. 2019). But *Thomas* is distinguishable from this case in several respects. There, the court identified four areas in which the ALJ provided insufficient explanation. *Id*. at 312. First, the ALJ drew no conclusions about how the claimant's mental limitations affected her ability to perform job-related tasks for a full workday. *Id.* Second, the ALJ did not explain her reliance on mental status findings made by physicians who were treating the claimant's foot pain, nor did the ALJ explain "whether, or why, the ALJ gave those findings the same weight as inconsistent findings made by . . . a licensed psychologist who evaluated [the claimant]." *Id.* Nor did the ALJ explain why she declined to discuss the claimant's record of mental health evaluations. *Id.* Third, the ALJ stated the claimant's "RFC first and only *then* conclud[ed] that the limitations caused by [her] impairments were consistent with that RFC." *Id.* (alterations in original) (citation omitted). Fourth, the ALJ stated

failed to explain why certain findings of N.P. Obiekwe were inconsistent with other evidence from the record, and that the ALJ's "failure to provide a coherent narrative discussion" of N.P. Obiekwe's opinion makes judicial review impossible. (ECF No. 13, at 14; *see also* ECF No. 17, at 2.) The Court disagrees.

The ALJ explained that the restrictive limitations stated by N.P. Obiekwe (including standing for two hours, walking for two hours, and sitting for four hours) were not supported by her own examination findings, including those showing normal gait, normal strength in all extremities except 4/5 strength in the right lower extremity, normal range of motion aside from bilateral shoulders and right hip, and normal joints aside from some neck and back tenderness. (*See* R. at 27, 29.) The ALJ also found such extreme limitations inconsistent with the other record evidence, which generally reflected normal and unremarkable findings (such as a normal gait, mild degenerative changes, mild tenderness, and mild pulmonary restriction). (*See* R. at 29.) Indeed, the ALJ extensively discussed these findings and explained why the record evidence did not support significant standing and walking limitations. (R. at 26-29.) The ALJ was not required to repeat this analysis of the record evidence in his discussion of N.P. Obiekwe's opinion. *See John R. v. Kijakazi*, No. 2:22-cv-47, 2023 WL 2682358, at *4 (E.D. Va. Mar. 29, 2023) ("[A]n ALJ need not repeat pertinent findings multiple times throughout a ruling for the purpose of supporting individual conclusions." (internal quotation marks omitted) (citations omitted)). Reading the decision as a whole, the ALJ's explanations sufficiently "build an accurate and logical bridge from the evidence to his conclusion." *Monroe v. Colvin*, 826 F.3d 176, 189 (4th Cir. 2016) (quoting

---

that the claimant could not "perform work 'requiring a production rate or demand pace'" but did not provide enough information for the court to understand the meaning of those terms. *Id.* (citation omitted). In contrast to those gaps, the ALJ's decision here contains sufficient explanation to allow the Court to follow the path of the ALJ's reasoning.

*Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000)). Specifically, the ALJ explained why Plaintiff's fibromyalgia and other impairments translated to a light work limitation with additional postural, manipulative, and environmental limitations. (*See* R. at 26, 29.)

Finally, Plaintiff argues that the ALJ's evaluation of N.P. Obiekwe's opinion lacks substantial evidentiary support. (ECF No. 13, at 14-16.) Specifically, Plaintiff argues that "the ALJ's apparent conclusion that NP Obiekwe's opinion is not consistent with or supported by the evidence of record is unsupported." (ECF No. 13, at 14.) To support this argument, Plaintiff cites numerous exam findings that she contends the ALJ "ignored" and "failed to address" in his discussion of N.P. Obiekwe's opinion. (ECF No. 13, at 14-15.)[10] While Plaintiff acknowledges that these findings are "minimal to mild," she argues that the findings—when taken alongside other objective evidence—"reasonably support limitations in exertional activities like standing and walking." (ECF No. 13, at 15.) Even though there is no requirement that an ALJ specifically refer to every piece of evidence in their decision, *Reid v. Comm'r of Soc. Sec.*, 769 F.3d 861, 865 (4th Cir. 2014), here, the ALJ did consider the exam findings highlighted by Plaintiff when formulating the RFC and adequately explained why the evidence supported an RFC for light work with the specified limitations. (*See* R. at 24, 26-29.)

Specifically, Plaintiff contends that the ALJ ignored findings such as:

> tenderness of the bilateral knees, cervical spine and paracervical muscles, paraspinal lumbosacral and parathoracic muscle areas, bilateral shoulders, wrists, and elbows, and bilateral DIP, PIP, and CMC joints; restricted bilateral shoulder range of motion; multiple trigger points; marked crepitation of the knees with active and passive range of motion; diminished breath sounds; pedal edema; and bilateral upper and lower extremity weakness.

[10] Not all the findings Plaintiff contends were ignored by the ALJ appear to support N.P. Obiekwe's opinion. For instance, Plaintiff cites imaging studies that indicate pulmonary restrictions, yet N.P. Obiekwe's examination contained no significant pulmonary findings. (ECF No. 13, at 14-15; *see* R. at 488.)

(ECF No. 13, at 14.) But the ALJ discussed these findings in arriving at the RFC determination. (*See* R. at 26-29.) The ALJ noted that "examinations showed tenderness in six joints," that Plaintiff had "a total of 12 trigger points," that she had "limited range of motion in her bilateral shoulders and hips," and "crepitus in both knees." (R. at 26.) The ALJ also acknowledged that Plaintiff had "weakness in her bilateral upper and lower extremities" but that a consultative exam showed "no deformity, tenderness, or swelling in her shoulders, elbows, hands or wrists, knees, feet or ankles." (R. at 26.) The ALJ discussed the decreased range of motion in Plaintiff's shoulders and acknowledged a remote history of shoulder surgery while also observing that Plaintiff was not receiving any current treatment for her shoulders. (R. at 21.) In considering these findings, the ALJ ultimately concluded that Plaintiff's fibromyalgia "contribute[d] to her exertional, postural, manipulative, and environmental limitations." (R. at 26.)

Plaintiff alleges that the ALJ also ignored February 2018 imaging studies demonstrating right hemi-diaphragm with right basilar atelectasis and a small ipsilateral pleural effusion, which "contributed to pain with breathing, shortness of breath, dyspnea on exertion, and productive cough," as well as November 2022 pulmonary function testing that confirmed a mild restrictive defect and moderately reduced diffusion capacity. (ECF No. 13, at 14-15.) The ALJ, however, pointed to normal pulmonary findings from 2018 (R. at 27 (citing Ex. B9F/29, 35 [R. at 523, 529])), 2019 (R. at 27 (citing Ex. B2F/9 [R. at 399])), 2022 (R. at 27 (citing Exs. B7F [R. at 488]; B9F/15, 19, 26 [R. at 509, 513, 520])), and 2023 (R. at 27 (citing Exs. B9F/12 [R. at 506]; B11F/5, 8, 11 [R. at 555, 558, 561]; B13F/6, 11 [R. at 605, 610])) that evidenced "normal respiratory effort, clear lungs, and no wheezes, rhonchi, or rales."[11] The ALJ also noted that "pulmonary function

[11] One such finding referenced by the ALJ is from N.P. Obiekwe's September 2022 consultative exam report, which noted that Plaintiff's lungs were "[c]lear to auscultation bilaterally," and exhibited "[g]ood air movement [with] [n]o wheeze, rales, or rhonchi." (R. at 488.) She

testing and spirometry revealed no evidence of obstruction, but there was reduction in [Plaintiff's] lung volumes, with mild restrictive defect, and reduced diffusion capacity corrected when considering alveolar volume." (R. at 27 (citing Ex. B9F/38 [R. at 532]).) As such, substantial evidence supports the ALJ's determination that Plaintiff could perform light work, and her mild impairments in this area were accounted for by the restrictions noted in the RFC, which included exertional and environmental limitations. (*See* R. at 24, 28.)

Plaintiff also claims that the ALJ ignored August 2022 X-rays showing mild spondylosis of her lumbar spine and mild degenerative changes in her right hand. (*See* ECF No. 13, at 15; R. at 27.) Here again, however, the ALJ considered these findings and noted that although "[Plaintiff] has taken Naprosyn and Cyclobenzaprine for her lumbar symptoms[,] . . . she is not currently receiving any treatment for this." (R. at 27.)

Contrary to Plaintiff's argument that the ALJ ignored this evidence, the ALJ considered these findings and discussed them at length in determining Plaintiff's RFC. The ALJ was not required to repeat his earlier discussion and analysis of these findings again during his discussion of N.P. Obiekwe's opinion. *See John R.*, 2023 WL 2682358, at *4.

While Plaintiff believes that these findings "reasonably support limitations in exertional activities like standing and walking" (ECF No. 13, at 15), this amounts to nothing more than a disagreement with the ALJ's conclusions regarding the evidence. "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [ALJ]." *Johnson*, 434 F.3d at 653 (alteration in original) (quoting *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996)). Plaintiff asks the Court to give her cited findings from

---

additionally noted that Plaintiff demonstrated "[n]o accessory muscle use" and was "[c]omfortable on room air." (R. at 488.)

the record greater weight, but the Court cannot "reweigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [ALJ]." *Hancock*, 667 F.3d at 472 (second alteration in original) (quoting *Johnson*, 434 F.3d at 653).

The ALJ appropriately articulated and considered the supportability and consistency of N.P. Obiekwe's opinions and provided an accurate and logical bridge from the record evidence to his conclusions regarding the same. Because the ALJ applied correct legal standards and substantial evidence supports the ALJ's conclusions, the Court finds no error.

### B. **The ALJ Properly Considered Plaintiff's Mental Impairments in Determining the RFC**

Next, Plaintiff argues that the ALJ erred in finding her mental impairments not severe and by failing to account for her anxiety and depression in the RFC. (ECF No. 13, at 16-18; ECF No. 17, at 2-3.) Plaintiff contends that the record shows that her anxiety and depression are severe impairments that have "more than a minimal effect on her ability to function." (ECF No. 13, at 16; ECF No. 17, at 2.) Regardless, severe or not severe, Plaintiff contends that the ALJ erred by not considering the effects of these impairments in the RFC. (ECF No. 13, at 18; ECF No. 17, at 3.)

The Commissioner responds that the ALJ properly found that Plaintiff's mental impairments were no more than "mild" (ECF No. 14, at 20), and that the ALJ was neither required to incorporate these mild limitations into the RFC nor explain why he declined to do so (ECF No. 14, at 24). The Court agrees with the Commissioner and finds that the ALJ reasonably analyzed Plaintiff's mental limitations and accounted for the same in the RFC.

In considering Plaintiff's mental limitations at step two, the ALJ found Plaintiff's anxiety and depression to be "non-severe" because they "[did] not cause more than minimal limitation in [Plaintiff]'s ability to perform basic mental work activities." (R. at 21.) In reaching this finding,

the ALJ considered the four functional areas used to evaluate mental impairments: understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing oneself. (R. at 21-22.) The ALJ found no more than mild (or slight) limitations in Plaintiff's ability to function "independently, appropriately, effectively, and on a sustained basis" in each of the four areas. 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00(F)(2)(b).

The ALJ adequately explained his reasoning for finding Plaintiff no more than mildly limited in these areas. (*See* R. at 21-22.) Although Plaintiff reported that she suffered from anxiety and depression, objective medical evidence showed that she was "alert and oriented," "able to remain focused and engaged," and had a "normal mood and affect" and "pleasant and cooperative demeanor." (R. at 21-22.) Plaintiff also exhibited "good insight" and "linear and logical thought processes." (R. at 21.) She also denied memory changes. (R. at 21.) Treatment records further showed that Plaintiff's depression and anxiety were well-controlled on medication. (R. at 22.) This constitutes substantial evidence supporting the ALJ's conclusion that Plaintiff's mental impairments cause no more than a "minimal limitation in [Plaintiff]'s ability to do basic work activities" and the absence of mental limitation in Plaintiff's RFC, which as the ALJ noted "reflects the degree of limitation . . . found in the 'paragraph B' mental function analysis." (R. at 22.)

Plaintiff cites the opinions of Dr. Galusha and Dr. Leizer to argue that the record evidence supports that Plaintiff's impairments have "more than a minimal effect on her ability to function." (ECF No. 13, at 16-17.) But as the Commissioner notes, the ALJ properly evaluated the opinions and medical findings of Drs. Galusha and Leizer, as well as those of Dr. Carne, and used them to explain why no mental limitations were incorporated in the RFC finding. (ECF No. 14, at 22 (citing R. at 28-29).)

Dr. Galusha found Plaintiff mildly impaired in her ability to perform detailed tasks versus simple and repetitive tasks and moderately impaired in her ability to perform activities on a consistent basis, interact with coworkers and the public, and deal with the usual stresses encountered in competitive work. (R. at 29.) Dr. Galusha supported her opinion with her evaluation findings of "tearfulness" and a "depressed and sad mood," but the ALJ found her opinion "not generally consistent with the evidence in the record, which aside from Dr. Galusha's findings, showed generally normal mental status findings." (R. at 29.) On this basis, the ALJ found Dr. Galusha's opinion unpersuasive. (R. at 29.)

The ALJ also considered Dr. Leizer's opinion. Dr. Leizer found that Plaintiff could perform only very familiar or routine procedures, could maintain concentration and attention for two-hour periods to complete a workday, and would need assistance adapting to changes unless such changes were infrequent and implemented gradually. (R. at 28.) Dr. Leizer supported his opinion by noting Plaintiff's diagnoses of anxiety and depression and her "irritable mood, low motivation for tasks, [and] difficulty interacting." (R. at 28-29.) The ALJ found Dr. Leizer's opinion unpersuasive, instead noting that another state agency reviewing psychologist, Dr. Carne, determined that Plaintiff's depression and anxiety were non-severe. (R. at 29.) Dr. Carne supported his opinion with evidence of "no ongoing mental health treatment with a psychiatrist, . . . fair to baseline mental examinations, no mental health emergencies, and [an] ability to perform a wide range of her activities of daily living." (R. at 29.) The ALJ found Dr. Carne's opinion consistent with evidence in the record showing generally normal mental status findings, and therefore, persuasive. (R. at 29.)

Plaintiff argues that exam findings by Jima Bogale, M.D., support the opinions of Drs. Galusha and Leizer. (ECF No. 13, at 17.) Plaintiff cites a November 2017 visit where she

complained of "mood swings, crying, and not wanting to leave her room some days;" a March 2019 visit where she endorsed "severe anxiety, frequent episodes of tearfulness, anger, screaming, sleep disturbances, and not wanting to get out of bed;" and a September 2019 visit where she complained of poor sleep. (ECF No. 13, at 17.) Here again, however, "[w]here conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [ALJ]." *Johnson*, 434 F.3d at 653 (second alteration in original) (quoting *Craig*, 76 F.3d at 589). The ALJ explained why Dr. Carne's opinion was more persuasive than the opinions of Drs. Galusha and Leizer, and while Plaintiff disagrees with the ALJ's interpretation of the evidence, the ALJ's decision allows the Court to trace the path of his reasoning and finds substantial support in the evidence. (*See* R. at 28-29.)

Plaintiff contends in the alternative that even if the ALJ properly found her mental impairments to be non-severe, the ALJ should have considered them in the RFC analysis. (ECF 13, at 18; ECF No. 17, at 3.) Plaintiff argues, correctly, that the regulations require the ALJ to consider all medically determinable impairments of which the ALJ is aware, including impairments that are not severe. (ECF No. 13, at 18 (citing 20 C.F.R. § 404.1545(a)(2)).)[12]

---

[12] Plaintiff relies on *DeLoatche v. Heckler*, 715 F.2d 148 (4th Cir. 1983) to argue that failure to consider the combined effect of all impairments is reversible error in the Fourth Circuit. (ECF No. 13, at 18.) *DeLoatche* is inapposite for multiple reasons.

The Fourth Circuit held in *DeLoatche* that the ALJ had erred significantly by failing to "analyze the cumulative or synergistic effect DeLoatche's various maladies [had] on her ability to work." 715 F.2d at 150. The court acknowledged that the ALJ may have considered all of the plaintiff's medical problems and had valid reasons for disregarding them, but that this was not evident from the record. *See id.*

Unlike in *DeLoatche*, the ALJ here considered "*all* of [Plaintiff]'s medically determinable impairments, including those that are not severe." (R. at 21 (emphasis added).) The ALJ specifically stated that the "[RFC] assessment reflects the degree of limitation the undersigned has found in the 'paragraph B' mental function analysis." (R. at 22.) He then summarized the medical record, including evidence pertaining to Plaintiff's non-severe impairments, and explained why the RFC formulation did not include mental limitations. (*See* R. at 24-30.) The record provides substantial support for the ALJ's RFC determination, and the ALJ adequately explained that the

However, just because the ALJ must *consider* the effects of non-severe impairments does not mean that the ALJ is required to discuss these impairments in the RFC. In fact, ample authority supports that the ALJ has no such obligation. An ALJ is "not required to explain or incorporate functional limitations with de minimis effects in RFCs." *Kimberly G. v. Comm'r of Soc. Sec.*, No. 2:21-cv-45, 2021 WL 8086729, at *10 (E.D. Va. Dec. 7, 2021), *report and recommendation adopted*, 2022 WL 882165 (E.D. Va. Mar. 24, 2022); *see also Lori A. J. v. Kijakazi*, No. 2:22-cv-131, 2023 WL 3069394, at *6 (E.D. Va. Apr. 5, 2023) ("[A]n ALJ is not required to discuss non-severe impairments in the RFC analysis so long as the ALJ considered them in the decision."), *report and recommendation adopted*, 2023 WL 3060789 (E.D. Va. Apr. 24, 2023); *Victoria B. v. Kijakazi*, No. 3:22-cv-157, 2023 WL 2579461, at *8 (E.D. Va. Mar. 20, 2023) ("[T]he ALJ was not required to incorporate Plaintiff's mild limitations in the [RFC]."); *Younger v. Berryhill*, No. 2:18-cv-182, 2019 WL 3432771, at *5 (E.D. Va. June 21, 2019) (finding remand was not required "when the ALJ failed to give an explanation in the presence of mild limitations only"), *report and recommendation adopted*, 2019 WL 3451305 (E.D. Va. July 29, 2019). In finding Plaintiff's anxiety and depression non-severe, her "limitations by their nature have 'no more than a minimal effect' on her working ability." *Kimberly G.*, 2021 WL 8086729, at *10 (quoting SSR 85-28, 1985 WL 56856 (Jan. 1, 1985)).

In any event, the ALJ explained in the RFC analysis why Plaintiff's non-severe mental impairments did not translate into any further limitations. (*See* R. at 25-30.) Specifically, the ALJ noted that while Plaintiff "reported depression and anxiety at her fibromyalgia treatment visits," her "mental status findings were normal." (R. at 26.) The ALJ also considered the opinion of Dr.

---

RFC did not include additional limitations because Plaintiff's mental impairments caused no more than "minimal limitation in [Plaintiff]'s ability to perform basic mental work activities." (R. at 21.)

Carne, who noted that Plaintiff was not undergoing mental health treatment with a psychiatrist, had experienced no mental health emergencies, had "fair to baseline" mental examinations, and was able to perform a "wide range" of her activities of daily living. (R. at 29.) The ALJ's consideration of the record provided an accurate and logical bridge from the evidence to his conclusion that Plaintiff's non-severe impairments did not translate into additional RFC limitations.

## V. CONCLUSION

For the reasons set forth above, the Court RECOMMENDS that Plaintiff's Motion for Summary Judgment (ECF No. 12) be DENIED, Defendant's Motion for Summary Judgment (ECF No. 14) be GRANTED, and the final decision of the Commissioner be AFFIRMED.

Let the clerk forward a copy of this Report and Recommendation to the Honorable United States District Judge David J. Novak and to all counsel of record.

## NOTICE TO PARTIES

**Failure to file written objections to the proposed findings, conclusions, and recommendations of the Magistrate Judge contained in the foregoing report within fourteen (14) days after being served with a copy of this report may result in the waiver of any right to a *de novo* review of the determinations contained in the report and such failure shall bar you from attacking on appeal the findings and conclusions accepted and adopted by the District Judge except upon grounds of plain error.**

/s/

Summer L. Speight
United States Magistrate Judge

Richmond, Virginia
Date: August 4, 2026